IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DARLENE A.,                          )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )    1:23CV976
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social        )
Security,                            )
                                     )
                    Defendant.¹      )
```

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Darlene A., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 10 (Plaintiff's Brief); Docket Entry 11 (Commissioner's Brief); Docket Entry 12 (Plaintiff's Reply)). For the reasons that follow, the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should substitute for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Court will remand this matter for further administrative proceedings.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB on March 15, 2021 (Tr. 154-61), alleging disability since June 21, 2020 (see Tr. 154, 157). Upon denial of that application initially (Tr. 76-86, 106-10) and on reconsideration (Tr. 87-100, 112-16), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 117). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 40-75.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 15-37.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 151-53, 237), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2025.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 21, 2020, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: intracranial hypertension, fibromuscular dysplasia, back

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 8 at 1.)

arthralgia, headaches, bipolar disorder, depressive disorder, and anxiety disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . . except she can occasionally climb, stoop, and occasionally balance with standing and walking on even terrain; must avoid concentrated exposure to hazards (such as unprotected heights and moving machinery) and vibration; can perform frequent overhead reaching; can tolerate moderate or less noise levels; can never drive an automobile for completion of job tasks; frequent near and far acuity; and after standing for one hour can sit for 5 minutes (while staying on task). [Plaintiff] is limited to understanding, remembering, and carrying out simple instructions (that can be detailed but not complex); performing tasks that are simple, routine, and repetitive in nature; can focus on tasks for two hours at a time; is limited to routine changes; and can perform work learned by demonstration in 30 days or less.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from June 21, 2020, through the date of th[e ALJ's] decision.

3

(Tr. 20-33 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court will remand this case for further administrative proceedings.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a

4

refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]."  Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)."  Id. at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).³  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id.

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).⁴  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines

---

³ The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

⁴ "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignment of Error

Plaintiff's first and only assignment of error argues that "[t]he ALJ erred . . . by failing to account for the vocationally limiting effects of Plaintiff's chronic headaches, resulting from her intracranial hypertension, in the RFC." (Docket Entry 10 at 4 (bold font and block formatting omitted); see also Docket Entry 12 at 1-2).) In particular, Plaintiff points to her testimony that, "even after the shunt [sic] was placed[,] . . . she was still experiencing headaches . . . at least four times a week" (Docket Entry 10 at 4 (citing Tr. 51-52)), as well as that "she ha[d] to lie down for three or four hours to relieve her headaches" (id. at 5 (citing Tr. 55)). In Plaintiff's view, "[t]he medical evidence of record is [] supportive of [her] testimony." (Id.; see also id. at 5-7 (detailing evidence Plaintiff believes supports greater

---

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

headache-based limitations in RFC (citing Tr. 38, 264, 267, 273-74, 278-83, 287, 292, 301, 313, 357, 426, 433, 435-36, 441-42, 510, 522)).) Plaintiff further notes that the VE testified "that an extra 30-minute break in the morning and in the afternoon would preclude competitive employment" (id. at 5 (citing Tr. 72-73)), and "that no more than 10% off-task behavior . . . and [] no more than one absence per month would be tolerated" by employers (id. (citing Tr. 73)). According to Plaintiff, despite the ALJ "correctly conclud[ing] that [Plaintiff]'s idiopathic intracranial hypertension and severe headaches were severe impairments" (id. at 7 (citing Tr. 20)), and "provid[ing] an explanation as to how [Plaintiff's back and psychological conditions we]re accounted for in the RFC" (id. (citing Tr. 24, 28-29)), the ALJ offered "no such explanation or discussion" relating to "[Plaintiff]'s idiopathic intracranial hypertension and headaches" (id. (citing Tr. 25-27)), and "included no absences or time off-task in the RFC and likewise declined to assess any limitations to account for [Plaintiff's] documented photophobia" (id. (citing Tr. 23)). For the reasons that follow, those contentions have merit and warrant remand.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See

9

Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c). An ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014); however, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). Here, as the following discussion will show, the ALJ failed to adequately explain why she omitted limitations related to light exposure, time off-task, and absences from the RFC.

To begin, the ALJ acknowledged Plaintiff's subjective complaints "that she continued to experience headaches, and stent placement did not resolve her symptoms." (Tr. 24 (emphasis added) (referencing Tr. 51-52).) The ALJ then found Plaintiff's subjective symptom reports "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (id. (emphasis added)), but (contrary to that statement and as explained in more detail below)

10

did not thereafter sufficiently explain why the ALJ discounted Plaintiff's subjective reports of headache symptoms.

In that regard, the ALJ summarized the medical evidence relating to Plaintiff's headaches (see Tr. 25-27), reiterated the ALJ's finding that "[Plaintiff]'s statements concerning the intensity, persistence, and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 29) and, in support of that finding, noted that "[Plaintiff] continue[d] to demonstrate normal strength, range of motion, gait, and sensation" (id.). However, the ALJ failed to explain how findings of normal strength, range of motion, gait, and sensation undermined in any way Plaintiff's consistent complaints of debilitating headaches accompanied by tinnitus, blurry vision, nausea, fatigue, and brain fog (see, e.g., Tr. 51-56, 201-02, 223, 257, 260, 262, 265, 274, 277-80, 287, 292, 308, 313, 407, 426, 441, 445, 522). See Creel v. O'Malley, No. 5:23CV1742, 2024 WL 4186662, at *11 (D.S.C. Apr. 19, 2024) (unpublished) ("The ALJ also found [a physician]'s opinions regarding [the p]laintiff's postural limitations inconsistent with [the physician's] treatment records indicating that [the p]laintiff exhibited full (5/5) strength of the upper and lower extremities, intact sensation, a normal gait, and normal reflexes. However, these physical findings do not necessarily negate the need for limitations because of [the p]laintiff's migraines." (internal

11

quotation marks and parenthetical citation omitted)), recommendation adopted sub nom. Angela C. v. O'Malley, 2024 WL 3648190 (D.S.C. Aug. 5, 2024) (unpublished); Robinson v. Colvin, 31 F. Supp. 3d 789, 792-93 (E.D.N.C. 2014) (finding that "ALJ's reliance on normal strength and reflexes to discount [a physician's] opinion would have no bearing on [the] plaintiff's limitations due to migraine headaches"). Moreover, the ALJ did not discuss Plaintiff's ability to engage in daily activities other than to note her "alleg[ations] that she requires assistance to perform tasks of personal care," and "that she does not prepare her own meals, do chores, drive, or shop for herself." (Tr. 24 (emphasis added) (referencing Tr. 201-08).) Thus, the ALJ's evaluation of Plaintiff's subjective symptom reporting does not explain the absence of limitations related to light exposure, off-task time, and absence in the RFC.

The ALJ's discussion of the opinion evidence similarly does not sufficiently support the absence of such limitations in the RFC. The state agency medical consultants did not include limitations on light exposure, off-task time, or absences in their RFC opinions (see Tr. 82-83, 94-96 (consultants' RFC assessments precluding concentrated exposure to vibrations and hazards due to headaches), but, the ALJ found the consultants' opinions "not persuasive," because Plaintiff's "subjective complaints ha[d] not been adequately considered" and concluded "that greater limitations

12

[we]re warranted" (Tr. 30 (emphasis added)). Although the ALJ included an additional limitation to moderate noise in the RFC (see Tr. 23), she provided no explanation for why consideration of Plaintiff's subjective complaints warranted a noise limitation but not limitations related to light exposure, off-task time, and/or absences (see Tr. 30).

Additionally, consultative medical examiner Lauren Flannagan, PA-C ("PA Flannagan") opined that Plaintiff's intracranial hypertension and fibromuscular dysplasia caused "relevant work place environmental limitations" (Tr. 412), the ALJ found that opinion "not persuasive" because PA Flannagan "d[id] not specify what those limitations would be" and found that opinion "not consistent with the overall record, which contain[ed] diagnostic testing and subjective complaints which would support some limitations" (Tr. 30). Accordingly, although the ALJ found PA Flannagan's reference to "environmental limitations" vague, the ALJ believed that the medical evidence and Plaintiff's subjective complaints warranted limitations without explaining why those limitations would not include limitations related to light exposure, off-task time, and/or absences. (See id.)[7]

---

[7] Although Plaintiff relies on a letter written by Jennifer Barnhardt Aldridge, NP, the Nurse Practitioner working with Dr. Kyle Fargen, Plaintiff's neurosurgeon, which states that Plaintiff's intracranial hypertension would cause her to need increased breaks, come to work late, and/or miss entire days of work (Docket Entry 10 at 7 (citing Tr. 38)), Plaintiff supplied that letter to the Appeals Council and, thus, the ALJ did not have the opportunity to consider that letter. As Plaintiff has not asked the Court to remand this case under sentence six of 42 U.S.C. § 405(g) on the basis of new and material evidence (see Docket (continued...)

13

The ALJ's evaluation of the medical evidence of record regarding Plaintiff's headaches similarly does not elucidate the ALJ's reasoning with regard to Plaintiff's headache-related limitations in the RFC. The ALJ provided explanations for how she accommodated Plaintiff's back arthralgia, fibromuscular dysplasia, and mental impairments in the RFC (see Tr. 24 ("[Plaintiff]'s back pain supports the [RFC's] limitation to light work except she can occasionally climb, stoop, and balance; must avoid concentrated exposure to vibration; and can stand for up to one hour before needing to sit for five minutes. However, [Plaintiff] has consistently demonstrated normal strength, range of motion, sensation, and gait indicate [sic] that greater limitations are not warranted."), 25 ("[Plaintiff]'s fibromuscular dysplasia supports the [RFC's] limitation that she can frequently perform overhead reaching and must avoid concentrated exposure to hazards. However, her primarily normal physical examinations indicate that greater limitations are not warranted."), 29 ("The combined effect of [Plaintiff]'s occasional difficulty with memory and concentration supports the above limitation to simple instructions, simple tasks, routine changes, and work that can be learned by demonstration in 30 days or less. However, [Plaintiff]'s primarily normal judgment, insight, and thought content indicate that greater limitations are

---

[7] (...continued)
Entries 10, 12), the undersigned will not consider that opinion letter on judicial review.

not warranted.")), but failed to provide any such explanation after summarizing the evidence relating to Plaintiff's intracranial hypertension and headaches (see Tr. 25-27).

Furthermore, the evidence summarized by the ALJ demonstrates that Plaintiff consistently complained of headaches throughout the relevant period in this case, unabated with various forms of treatment, including surgical implantation of three stents, multiple lumbar punctures, and different medications. (See id.) Thus, as argued by Plaintiff, the ALJ here "summarize[d ] the medical evidence related to [Plaintiff]'s idiopathic intracranial hypertension and headaches," and then "'failed to build an accurate and logical bridge from the evidence to [the ALJ's] conclusion' that the RFC need not include [absences or off-task time in the RFC] which are present in and supported by the medical evidence of record." (Docket Entry 7 at 7-8 (quoting Monroe v. Colvin, 826 F.3d 176, 189-90 (4th Cir. 2016)).) The ALJ's failure to provide an adequate explanation frustrates the Court's ability to meaningfully review the ALJ's decision-making regarding the impact of Plaintiff's headaches. See Myers v. Saul, No. 1:20CV420, Docket Entry 16 at 12 (M.D.N.C. July 2, 2021) (unpublished) (Webster, M.J.) ("[T]he ALJ goes straight from listing th[e medical] evidence to setting forth [the p]laintiff's RFC, which accommodates some of [her] alleged limitations (phonophobia) but omits others (photophobia, absenteeism) making it impossible to trace the

15

logical path of [the ALJ's] reasoning."), recommendation adopted, slip op. (M.D.N.C. July 20, 2021) (Biggs, J.); Porterfield v. Berryhill, No. 1:18CV319, Docket Entry 18 at 7 (M.D.N.C. Aug. 6, 2019) (unpublished) (Webster, M.J.) ("[T]he ALJ described much of the relevant evidence of record as to the severity and limiting effects of [the p]laintiff's headaches. Nevertheless, the ALJ goes straight from listing this evidence to setting forth [the p]laintiff's RFC. What is missing is an adequate analysis that meaningfully explains how the ALJ reconciled the conflicting evidence on record. Nor did the ALJ make findings regarding the frequency, duration, and intensity of [the p]laintiff's headaches. Without findings such as these, or something equally relevant, the [c]ourt is unable to discern, without undue speculation, the logical bridge between the ALJ's summary of the medical record and her RFC determination as it relates to [the p]laintiff's headaches."), recommendation adopted, slip op. (M.D.N.C. Aug. 23, 2019) (Schroeder, C.J.).

A recent, unpublished opinion from the United States Court of Appeal for the Fourth Circuit confirms that the ALJ's failure of explanation here warrants remand:

> [The plaintiff] contends the ALJ failed to adequately explain why the limitations included in the RFC sufficiently accounted for [the plaintiff's] headaches. Most significantly, she contends the ALJ erred by not making specific findings regarding how often [the plaintiff] would be absent from work due to the frequency and severity of her headaches. We agree. The [VE] testified a hypothetical person would be precluded from

16

> maintaining full time employment if she were absent more than once a month. <u>The record shows that, even after receiving treatment that reduced the frequency of her headaches, [the plaintiff] still reported getting headaches about once a week. And although [she] told her physicians the severity of her headaches had lessened with treatment, the record does not establish whether her headaches nevertheless remained severe enough to cause her to be absent from work when they occurred. The ALJ did not make specific factual findings on that point</u>. The ALJ's failure to reach an "express conclusion in the first instance" on the potentially dispositive issue of whether the frequency and severity of [the plaintiff]'s headaches would cause her to be absent from work more than once a month — or to explain how, despite any potential absences, the evidence supported [the ALJ's] finding that the limitations included in the RFC sufficiently accounted for [the plaintiff]'s impairments — is an error of law that necessitates remand.

<u>Woody v. Kijakazi</u>, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (unpublished) (emphasis added) (citing <u>Dowling v. Commissioner of Soc. Sec. Admin.</u>, 986 F.3d 377, 388 (4th Cir. 2021), and <u>Thomas v. Berryhill</u>, 916 F.3d 307, 311-12 (4th Cir. 2019)); <u>see also</u> <u>John F. M. v. Kijakazi</u>, No. 1:23CV126, 2023 WL 6057500, at *17 (D.S.C. Sept. 18, 2023) (unpublished) ("[The ALJ] failed to resolve conflicting evidence as to the frequency and duration of [the p]laintiff's migraines and their limiting effects. The record reflect[ed the p]laintiff's reports to his medical providers of migraines that occurred as often as daily and as infrequently as twice a month . . . . Assuming the ALJ found [the p]laintiff's migraines were resolved by taking Imitrex and a nap, [the ALJ] did not explain how often and how long [the plaintiff] would be incapacitated and how this would affect his ability to

17

complete a normal workday and workweek. . . . Even if [the p]laintiff required only a few hours of rest away from the workstation when experiencing a migraine, he would still be off-task for some portion of the workday.").

In sum, the ALJ failed to "identify evidence that support[ed the omission of limitations related to light exposure, off-task time, and absences in the RFC] and [to] build an accurate and logical bridge from that evidence to [the RFC]," Woods, 888 F.3d at 694, leaving the Court to "guess about how the ALJ arrived at his conclusions," Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Under such circumstances, the Court will remand this matter for further consideration of Plaintiff's headache-related limitations. See Myers, No. 1:20CV420, Docket Entry 16 at 8 ("[T]he ALJ appears to endorse [the p]laintiff's testimony that she is sensitive to light, noise, and odors, but then - without adequate explanation - only includes a noise limitation in the RFC. This alone is reversible error requiring a remand." (internal citation omitted)).[8]

---

[8] Plaintiff alternatively asks the Court for "reversal of the ALJ's decision for an award of benefits." (Docket Entry 10 at 11.) In this case, the Court will opt for remand, because the record does not compel a finding that Plaintiff's headaches would have caused her to experience work-preclusive off-task time and/or work absence, and remand constitutes the proper course when conflicts exist in the medical record, and the ALJ failed to provide an adequate explanation, see Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) ("conclud[ing] that the district court abused its discretion in directing an award of benefits rather than remanding for further explanation by the ALJ [where] . . . [t]he ALJ's decision . . . [wa]s devoid of reasoning").

18

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED,** and that this matter is **REMANDED** under sentence four of 42 U.S.C. 405(g) for further administrative proceedings, to include re-evaluation of the impact of Plaintiff's headaches on her RFC, with an express discussion of her ability to tolerate exposure to noise and light, as well as her abilities to remain on-task and maintain attendance at work.

                                      /s/ L. Patrick Auld
                                          **L. Patrick Auld**
                        **United States Magistrate Judge**

December 31, 2024